UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROBERT W. ELLIOTT,<br><br>                 Petitioner,<br>     v.<br>E.K. MCDANIEL, *et al.*,<br><br>                Respondents. | Case No. 3:11-cv-00041-MMD-CBC<br><br>ORDER |

**I.    SUMMARY**

Robert W. Elliott's 28 U.S.C. § 2254 habeas corpus petition is before the Court on Respondents' motion to dismiss ("Motion").[1] (ECF No. 60.) For the reasons discussed herein, the Motion is granted in part and denied in part.

**II.    BACKGROUND**

On September 13, 2005, a jury convicted Elliott of two counts of robbery with use of a deadly weapon in connection with a robbery at a Reno Dollar Tree store (Exhibits ("Exh.") 34, 35).[2] The state district court sentenced him to two consecutive terms of 72 to 180 months, with two equal and consecutive terms for the deadly weapon enhancement. (Exh. 40.) Judgment of conviction was filed on October 25, 2005. (Exh. 41.)[3]

---

[1] Elliott responded (ECF No. 66), and Respondents replied (ECF No. 73).

[2] Unless otherwise noted, exhibits referenced in this order are exhibits to Respondents' motion to dismiss, ECF No. 60, and are found at ECF Nos. 61-63. Exhibits to Petitioner's amended petition, ECF No. 49, are found at ECF Nos. 50-53, and are referred to as Petitioner's exhibits ("Pet. Ex.").

[3] In another jury trial that overlapped with this case, Elliott was convicted of one count of robbery with an age enhancement and one count of robbery with use of a deadly weapon in connection with the robbery of a Smith's grocery store in Reno.

Elliott appealed, and the Nevada Supreme Court affirmed his convictions in May 2006. (Exh. 55.)

Elliott filed a state postconviction petition for writ of habeas corpus. (Exh. 61.) The state district court granted his motion for appointment of counsel, and Elliott filed a supplemental petition. (Exh. 71.) Following an evidentiary hearing, the state district court denied the petition. (Exhs. 84, 85.) The Nevada Supreme Court affirmed the denial of the petition on December 10, 2010. (Exh. 99.)

Elliott originally dispatched this federal petition for writ of habeas corpus in January 2011. (ECF No. 5.) Through counsel, Elliott filed an amended petition in May 2018. (ECF No. 49.) Respondents now move to dismiss most grounds of the amended petition as unexhausted. (ECF No. 60.)

## III.    LEGAL STANDARD

State prisoners seeking federal habeas relief must comply with the exhaustion rule codified in § 2254(b)(1):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) The applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

The purpose of the exhaustion rule is to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal court, and to "protect the state courts' role in the enforcement of federal law." *Rose v. Lundy*, 455 U.S. 509, 518 (1982); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim

2

through direct appeal or state collateral review proceedings. *See Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981).

A habeas petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). The federal constitutional implications of a claim, not just issues of state law, must have been raised in the state court to achieve exhaustion. *See Ybarra v. Sumner*, 678 F. Supp. 1480, 1481 (D. Nev. 1988) (citing *Picard*, 404 U.S. at 276)). To achieve exhaustion, the state court must be "alerted to the fact that the prisoner [is] asserting claims under the United States Constitution" and given the opportunity to correct alleged violations of the prisoner's federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *see also Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). It is well settled that 28 U.S.C. § 2254(b) "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir. 2001) (quoting *Rose v. Lundy*, 455 U.S. 509, 520 (1982)). "[G]eneral appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citations omitted). However, citation to state caselaw that applies federal constitutional principles will suffice. *See Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. *See Bland v. California Dep't of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994). The exhaustion requirement is not met when the petitioner presents to the federal court facts or evidence which place the claim in a significantly different posture than it was in the state courts, or where different facts are presented at the federal level to support the same theory. *See Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988); *Pappageorge v.*

3

*Sumner*, 688 F.2d 1294, 1295 (9th Cir. 1982); *Johnstone v. Wolff*, 582 F. Supp. 455, 458 (D. Nev. 1984).

## IV. DISCUSSION

### A. Grounds 5(B), 6 and 10

Respondents first argue out that Petitioner has acknowledged grounds 5(B), 6, and 10 are unexhausted. (ECF No. 60 at 9.)

In ground 5(B), Elliott argues that the sentencing judge had an "intolerable risk" of bias against him in violation of his Fifth and Fourteenth Amendment rights. (ECF No. 49 at 31-34.) He contended that state district Judge Steven R. Kosach created the appearance of bias because he repeatedly vouched for Elliott's counsel, Kevin Van Ry, who was the judge's former law clerk, and repeatedly denied Elliott's motions for new counsel. Ground 6 contends that Van Ry rendered ineffective assistance of counsel ("IAC") for failing to ask Judge Kosach to recuse himself, in violation of Elliott's Sixth and Fourteenth Amendment rights. (ECF No. 49 at 34-35.) In ground 10, Elliott asserts IAC for Van Ry's failure to challenge the alleged duplicate robbery charges at trial. He argues that Van Ry should have asked the court to give the jury a pre-deliberation advisory verdict to the effect that it should return a guilty verdict (if any) on only one charge or ask the court to instruct the jury that in order to convict Elliott of two crimes, the jury had to find beyond a reasonable doubt that both employees had joint possession of and control over the stolen funds. (ECF No. 49 at 39-40.)

Elliott concedes that these grounds are unexhausted. He instead urges this Court to treat the claims as technically exhausted/procedurally defaulted. (ECF No. 66 at 18-19.) "Procedural default" refers to the situation where a petitioner in fact presented a claim to the state courts but the state courts disposed of the claim on procedural grounds, instead of on the merits. A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *See Coleman*

4

*v. Thompson*, 501 U.S. 722, 730-31 (1991). The *Coleman* Court explained the effect of a procedural default:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

Elliott describes a claim as "technically exhausted" if the state courts would no longer review it on the merits. Elliott acknowledges that would be the case if he tried to submit a new petition with these claims to the state courts. First, the state courts would find Elliott's petition time-barred, because he would be filing it outside the one-year statute of limitations. *See* NRS § 34.726. Second, the state courts would find Elliott's petition successive, because he has already filed a previous petition. *See* NRS § 34.810. Elliott agrees that the state courts would almost certainly apply those procedural bars and argues that therefore he does not have an available remedy in state court. However, he asserts that he can demonstrate cause and prejudice to excuse the procedural default.

To demonstrate cause for a procedural default, the petitioner must be able to "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488 (emphasis added). For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

In federal habeas cases arising out of Nevada, the state courts generally apply substantially the same standards as the federal courts in determining whether a petitioner can demonstrate either cause or actual innocence in order to overcome a claimed procedural default. Thus, if the petitioner has a potentially viable cause-and-prejudice or actual-innocence argument under the generally substantially similar federal and state standards, then petitioner cannot establish that "it is clear that the state court would hold

5

the claim procedurally barred." *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002) (emphasis added; citations and quotation marks omitted). On the other hand, if the petitioner has no such potentially viable arguments, then the claim indeed is technically exhausted; but it is also subject to immediate dismissal with prejudice as procedurally defaulted.

Ineffective assistance of counsel claims present a different situation in this context. Elliott argues that he can show cause and prejudice and that the default of grounds 5(B), 6 and 10 should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), because he received ineffective assistance of state postconviction counsel (ECF No. 95 at 5-10).

The Court in *Coleman* held that ineffective assistance of counsel in postconviction proceedings does not establish cause for the procedural default of a claim. *See Coleman*, 501 U.S. at 750. In *Martinez*, the Court established a "narrow exception" to that rule. The Court explained that,

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17. The Ninth Circuit has provided guidelines for applying *Martinez*, summarizing the analysis as follows:

> To demonstrate cause and prejudice sufficient to excuse the procedural default, therefore, *Martinez* . . . require[s] that Clabourne make two showings. First, to establish "cause," he must establish that his counsel in the state postconviction proceeding was ineffective under the standards of *Strickland [v. Washington*, 466 U.S. 668 (1984)]. *Strickland*, in turn, requires him to establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different. Second, to establish "prejudice," he must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."

6

*Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014) (citations omitted). Applying such guidelines here compels dismissal of one ground.

First, ground 5(B)—the claim that the sentencing judge had an "intolerable risk" of bias against Elliott—is a substantive claim. (ECF No. 49 at 31-34.) A *Martinez* analysis may only be invoked when the underlying claim is one of ineffective assistance of trial counsel. Accordingly, ground 5(B) is dismissed as procedurally barred.

Next, grounds 6 and 10 are claims of trial IAC (trial IAC for failing to ask Judge Kosach to recuse himself and trial IAC for failure to challenge the alleged duplicate robbery charges) (ECF No. 49 at 34-35, 39-40). The *Martinez* analysis with respect to these claims is intertwined, to a large extent, with the analysis of the underlying merits of the claims. Elliott will need to demonstrate that postconviction counsel was ineffective under *Strickland v. Washington* and that these IAC claims are substantial. As such, the Court will defer ruling on the *Martinez* issue to the merits disposition of Elliott's petition.

**B. Grounds 1, 2, 3, 4, 5(A), 7 and 11**

Respondents argue that Elliott never presented grounds 1, 2, 3, 4, 5(A), 7 and 11 to the Nevada Supreme Court. (ECF No. 60 at 9-10.)

The particulars of these grounds are as follows. In ground 1, Elliott argues that Van Ry represented him notwithstanding an actual conflict of interest because his firm, the Jack Alian Conflict Group, had a financial disincentive to incur the expense of investigators or experts. (ECF No. 49 at 21-23.) In ground 2, Elliott alleges that he and Van Ry had a complete breakdown of the attorney-client relationship, in violation of his Fifth, Sixth and Fourteenth Amendment rights. (*Id.* at 24-26.) Ground 3 states that the trial court's refusal to let him represent himself violated his Sixth and Fourteenth Amendment rights. (*Id.* at 26-27.) Ground 4 asserts that Van Ry was ineffective for failing to introduce exculpatory evidence, namely, alibi witnesses and evidence that Elliott had a job and other sources of financial support, and for failing to seek DNA testing of cigarette butts police collected from near the Dollar Tree store. (*Id.* at 27-31.) Ground 5(A) alleges that

7

Judge Kosach had an intolerable risk of bias against him and in particular was unable to objectively evaluate Van Ry's performance. (*Id.* at 31-33.) Ground 7 alleges IAC in violation of his Sixth and Fourteenth Amendment rights for Van Ry's failure to file a motion to suppress the BB gun. (*Id.* at 36-37.) Ground 11 contends that Van Ry represented him on direct appeal despite a conflict of interest, a breakdown in the attorney-client relationship, and having withdrawn as counsel, in violation of his Sixth and Fourteenth Amendment rights. (*Id.* at 40-41.)

Elliott presented all of these grounds to the state district court in his *pro se* state postconviction petition and supplement. (Exhs. 61, 71.) On appeal from the denial of the petition, Elliott, through counsel, raised two claims: (1) that the State violated *Brady v. Maryland* by failing to provide Elliott with an investigative memo that showed that the State had previously located two potentially exculpatory witnesses; and (2) that the district court abused its discretion when it denied a continuance of the evidentiary hearing when the State presented the investigative memo. (Exh. 94 at 5-10.) Elliott did not present the above grounds 1, 2, 3, 4, 5(A), 7 and 11 to the Nevada Supreme Court on appeal. (*See* Exhs. 53, 87.) They are, therefore, unexhausted.

However, Elliott argues that this court should view grounds 1, 2, 3, 4, 5(A), 7 and 11 as exhausted—and points to *Clemmons v. Delo*, 124 F.3d 944, 947 (8th Cir. 1997) to support his position. In *Clemmons*, the petitioner, through counsel, presented a *Brady* claim among other claims in his state postconviction petition. *See* 124 F.3d 944, 947 (8th Cir. 1997). The petitioner's lawyer failed to present the issue on appeal, despite repeated instructions from petitioner to do so. The petitioner then attempted to file a *pro se* supplemental brief with the state supreme court, but the court denied him leave to file the brief. That Eighth Circuit Court of Appeals concluded that the petitioner had fairly presented his *Brady* claim to the highest state court. The court reasoned that the situation went beyond an omission by counsel. The petitioner had written to counsel, requested to be kept informed, and specifically stated that he wanted all issues presented to the

8

highest court in order that they would be preserved for review. In declining to do so, his counsel explained that he had presented every argument that he felt could be supported by law and evidence. The petitioner then moved the state supreme court for leave to file a supplemental brief *pro se*, which the court denied without comment. The Eighth Circuit concluded that the petitioner did everything he could do to bring the *Brady* issue to the state supreme court and that in that instance the claim was fairly presented and therefore exhausted.

Here, Elliott apparently wrote several letters to his state postconviction counsel, Mary Lou Wilson, about the appeal of his state petition. (Pet. Exhs. 42-46.) In an April 12, 2010 letter he stated that he wished to appeal the denial of the petition and requested that counsel send him the State's investigative memo and a transcript of the evidentiary hearing. (Pet. Exh. 42.) He also asked that counsel meet with him before filing the fast track statement to discuss what issues would be raised. (*Id.*) Elliott wrote a letter on April 27, 2010, thanking counsel for sending the requested documents. (Pet. Exh. 43.) He reiterated that he wanted to meet with counsel before his appeal was filed, emphasized that "this is not negotiable," and directed that if counsel could not meet with petitioner then he would proceed *pro se*. The only issue he referenced specifically was the alibi witnesses. (*Id.*) In a June 28, 2010 letter Elliott urged that he would not sign off on the appeal until he reviewed it and stated that he would contact the Nevada Supreme Court to preserve his issues on appeal. (Pet. Exh. 44.) Again the only issue he identified specifically in that letter is the alibi witnesses. (*Id.*) Elliott apparently wrote again on July 8, 2010 stating: "I am waiting still for your response to a meeting requested BEFORE you file anything . . . again please send info on alibi witnesses!" (Pet. Exh. 45.) He does not provide any proof of mailing that letter.[4]

---

[4]The letters found at Pet. Exhs. 42-44 all include postmarked envelopes. The letters found at Pet. Exhs. 45 and 46 do not have postmarked envelopes or anything else on them to indicate that they were actually mailed.

The record reflects that Wilson filed a fast track statement on appeal on July 26, 2010. (Exh. 94.) Elliott provides a copy of a letter purportedly written on July 30, 2010, in which he complains that Wilson only challenged one ground on appeal when Elliott wanted her to raise all grounds on appeal. (Pet. Exh. 46.) He directed Wilson to withdraw immediately. He indicated that he was sending a copy of the letter to the Nevada Supreme Court with a request to supplement the fast track statement and a request for new counsel. Elliott sent a letter to the Nevada Supreme Court, which was filed in his appeal of the state postconviction petition. *See* Nevada Supreme Court Case No. 56302. In that letter, Elliott stated that he wished to supplement his fast track statement and raise all grounds denied by the state district court. He also stated that he had terminated Wilson's representation. The Nevada Supreme Court directed that the letter be filed but denied Elliott's motion for leave to file proper person documents. The court stated that it was counsel's responsibility to identify issues for appeal and noted that Elliott could not fire appointed counsel. (*See id.*)

Respondents argue that Elliott did not exhaust any grounds from his state postconviction petition except for the two purported *Brady* claims because none of the other claims were presented "within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005); *see Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Respondents point out that the Nevada Supreme Court accepted Elliott's letter, considered his request to file supplemental briefing and denied it, concluding that counsel was responsible for prosecuting the appeal. (ECF No. 73 (citing Nevada Supreme Court Case No. 56302, order dated September 13, 2010).) Thus, they argue that the letter was legally insufficient to exhaust any claims. Respondents further argue that even if the letter was considered a sufficient manner of presenting the claims, Elliot failed to identify any facts related to his claims. They contend that bare references to claims raised in state district court, with no factual support, cannot serve to exhaust the claims. (*See id.*)

Respondents also distinguish *Clemmons* on two bases. First, in contrast to the bare assertions in Elliott's letter, the *Clemmons* petitioner identified 130 claims and identified specific documents that he wanted to provide as supplemental briefing. Second, the Missouri Supreme Court simply denied the motion for supplemental briefing without comment; the Eighth Circuit explained that the Missouri Supreme Court had no rule specifying the circumstances in which the court allowed pro se briefs. *See Clemmons*, 124 F.3d at 948 n.3. But the Nevada Supreme Court specifically invoked NRAP 46(b) (now NRAP 46A: "A party who is represented by counsel shall proceed through counsel and is not permitted to file written briefs or other papers, in *pro se* . . . ."). Respondents finally note that Elliott does not have a right to both assistance of counsel and acceptance of his own proper person filings. (ECF No. 73 (citing *U.S. v. Bergman*, 813 F.2d 1027, 1030 (9th Cir. 1987).)

The Court concludes that Elliott did not fairly present grounds 1, 2, 3, 4, 5(A), 7 and 11 to the Nevada Supreme Court.

Elliott argues alternatively that this Court should treat these grounds as technically exhausted/procedurally defaulted. (ECF No. 66 at 16-21.) He asserts that he can demonstrate good cause and actual prejudice to overcome the procedural default because his postconviction counsel abandoned him.

Elliott points to *Maples v. Thomas*, 565 U.S. 266, 281 (2012), and *Towery v. Ryan*, 673 F.3d 933 (9th Cir. 2012) to support his argument that attorney abandonment can give rise to good cause. In *Maples*, two lawyers from a large New York law firm represented petitioner in his state postconviction petition in Alabama. *See Maples*, 565 U.S. at 270. While his petition was pending in state court, the lawyers left the firm, and their new employment disabled them from representing Maples. They did not inform Maples or the court. Maples was not informed when his petition was denied and, with no representation, the time to appeal ran out. The federal district and appellate courts rejected his federal habeas petition as procedurally defaulted. The Court reversed, concluding that Maples

11

had demonstrated "ample cause," reasoning that when Maples missed the deadline to appeal, he had no attorney serving as his agent "in any meaningful sense of the word." *Id.* at 288.

Elliott urges that, as in *Maples*, the Court may excuse a procedural default if the petitioner's "attorney abandons his client without notice, and thereby occasions the default." *See* 565 U.S. at 281. While mere "negligence" on the part of an attorney might not give rise to cause (*id.* at 282), "more serious instances of attorney conduct" may qualify (*Holland v. Florida*, 560 U.S. 631, 652 (2010); *see also Maples*, 565 U.S. at 280-83 & n.7). For example, if the attorney's misconduct "sever[s] the principal agent relationship," and the attorney is "no longer act[ing] . . . as the client's representative," a petitioner may be able to establish cause. *Maples*, 565 U.S. at 281.

Elliott argues that Wilson "performed incompetent legal work" for him throughout her representation. *See Towery v. Ryan*, 673 F.3d 933, 944 (9th Cir. 2012). The Court agrees that the state-court record and Elliott's letters reflect that Wilson "failed to communicate with" Elliott and "refused to implement his reasonable requests." *Id.* Elliott points out that Wilson failed to move in advance for a continuance for the evidentiary hearing on the state postconviction petition even though she had not yet located the alibi witnesses. She waited until the hearing, the State objected that she did not timely move for a continuance, and the court denied the continuance. (Exh. 84.) After that hearing, Elliott wrote repeatedly to Wilson, insisting that they discuss the issues to be raised on appeal before she filed the fast track statement. (Pet. Exhs. 42-46.) He stated that as he understood the state-court rules, Wilson was required to file the notice of appeal, but then he wanted her to withdraw after. He emphasized that if Wilson did not go over the issues with him prior to filing the appeal that he wanted her to withdraw so that he could proceed *pro se*. It does not appear that Wilson responded in any way except for sending Elliott the transcript and investigative memo that he requested. When Wilson filed the appeal without consulting Elliott, he asked her to withdraw and even tried to alert the Nevada

12

Supreme Court that he wished to raise additional claims. He was then trapped by the fact that he had appointed counsel; the Nevada Supreme Court invoked the appellate rule that a party represented by counsel is not permitted to file anything in *pro se* even though Elliott had stated in his letter to the court that he had terminated Wilson.

In this particular circumstance, the Court concludes that Elliott has demonstrated good cause as to the procedural default of grounds 1, 2, 3, 4, 5(A), 7 and 11. While Elliott asserts that he has also demonstrated prejudice because each of these grounds is a winning claim, the Court will defer a determination on prejudice to the merits review of Elliott's remaining claims.

### C. Grounds 8 and 9

In their reply, Respondents acknowledge that upon further review of Elliott's direct appeal, grounds 8 and 9 are exhausted. (ECF No. 73 at 7.) The Court agrees. The Court will thus decline to dismiss these grounds.

### D. CONCLUSION

It is therefore ordered that Respondents' motion to dismiss (ECF No. 60) is granted in part as follows: (1) ground 5(B) is dismissed as procedurally barred; (2) a decision on grounds 1, 2, 3, 4, 5(A), 6, 7, 10 and 11 is deferred; and (3) grounds 8 and 9 are exhausted.

It is further ordered that Respondents will have 60 days from the date this order is entered within which to file an answer to the remaining claims in the first-amended petition.

It is further ordered that Petitioner will have 45 days following service of Respondents' answer in which to file a reply.

///
///
///
///

13

It is further ordered that Respondents' motion for extension of time to file a reply in support of the motion to dismiss (ECF No. 72) is granted *nunc pro tunc*.

DATED THIS 22nd day of August 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE